**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| K.S.,<br><br>Plaintiff,<br><br>v.<br><br>Wyndham Hotels & Resorts Incorporated, et al.,<br><br>Defendants. | No. CV-25-00574-TUC-SHR (LLP)<br><br>**REPORT AND RECOMMENDATION** |

Defendants Wyndham Hotels & Resorts, Inc., La Quinta Holdings, Inc., La Quinta Properties, Inc., CorePoint Lodging, Inc., CPLG Properties, LLC, and LQ Management, LLC (together "Defendants") filed a Motion to Dismiss Plaintiff K.S.'s First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 28.) The motion is fully briefed. (Docs. 29–30.) This matter was referred to Magistrate Judge Lori L. Price for Report and Recommendation pursuant to the Rules of Practice of the Court. (Doc. 23.) The Magistrate Judge recommends the District Court, after its independent review of the record, grant the motion in part and deny it in part.

## I. Background

In October 2025, Plaintiff K.S. filed this action under Arizona negligence law and the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), which provides victims of sex or human trafficking a civil remedy against a defendant who perpetrated or benefited from the victim's trafficking. (Doc. 1.) In the

First Amended Complaint ("FAC"), Plaintiff alleges the following facts.[1] (Doc. 26.)

Throughout 2016, when Plaintiff was 26 years old, Eddrick Jones forced her to engage in commercial sex three to four times a month at La Quinta Inn & Suites by Wyndham Tucson Airport, 7001 S. Tucson Blvd., Tucson, AZ 85756 ("La Quinta Tucson Airport" or "the Hotel"). (*Id.* at 2, 13.) Jones and his cousin "Tru," who trafficked an unnamed woman, booked separate rooms at the Hotel and then checked in together with Plaintiff and the other woman present. (*Id.* at 13.) Plaintiff alleges Jones forced her to take narcotics "to keep her compliant," "branded" her with a tattoo on her right orbital bone (three stars and five dots) that was "visible and obvious to hotel staff," forced her to dress seductively, and controlled her movements in the Hotel's common areas. (*Id.* at 13–14.) Jones also coerced her by withholding her identifying documents and physically and verbally abusing her, which at times occurred in "plain sight and earshot of Defendants' staff." (*Id.* at 20, 26, 32, 38–39, 45, 51.)

Plaintiff alleges Jones forced her to have sex with approximately seven men per day, which he arranged online prior to the encounters. (*Id.* at 14.) Plaintiff "was expected to greet these men in the front lobby in view of the front desk." (*Id.*) These men were "constantly coming in and out" of the hotel room, and the staff commented to Plaintiff about the "heavy traffic" but never attempted to help her or prohibit her or Jones from staying at the Hotel. (*Id.*) Plaintiff made multiple requests per stay for extra towels, and the room was left with "multiple condoms and condom wrappers strewn about [it]." (*Id.*) When Plaintiff was being trafficked, loud noises, yelling, and intermittent screaming came from the room that were loud enough "to be heard by staff outside the room." (*Id.* at 22–23, 28–29, 35, 41, 47–48, 53–54.) The staff also observed cash, drugs, drug paraphernalia, and lubricants in the room. (*Id.*)

Plaintiff alleges she knew the individuals who observed and heard these sex

[1] After Defendants moved to dismiss the Complaint (Doc. 25), Plaintiff amended the Complaint in February 2026 as a matter of course (Doc. 26). While Defendants assert Plaintiff filed a "First Amended Complaint" on October 16, 2025, making the operative Complaint a "Second Amended Complaint" (Doc. 28 at 2 n.1), Plaintiff clarifies that the October 16, 2025 Complaint was the original Complaint but with the correct civil cover sheet attached (Doc. 29 at 2 n.1). As such, the FAC is the operative Complaint. (Doc. 26.)

trafficking signs were hotel staff members based on her "knowing of the individual" or by their wardrobe, nametags, hotel logo, or presence in employee restricted areas. (*Id.* at 23, 29, 35–36, 42, 48, 54.) Plaintiff alleges Defendants' staff also observed sex trafficking "red flags," including Jones and other suspicious individuals monitoring the hallways and Hotel perimeter and Jones "shadowing" Plaintiff. (*Id.* at 22–23, 28–29, 35, 41, 47–48, 53–54.) Plaintiff further alleges her physical appearance indicated to Defendants' staff that she was being forced to engage in commercial sex including her visible bruising, poor hygiene, overt physical deterioration, and being malnourished and substance impaired. (*Id.*) Moreover, Plaintiff alleges Jones directly interacted with Defendants' staff members by paying, befriending, and compensating them to act as "lookouts" and inform him about police activity "or other similar type alerts." (*Id.* at 21, 27, 33, 39–40, 46, 52.)

Plaintiff alleges Defendants are connected corporate entities that all exercise control over La Quinta Tucson Airport. Specifically, Plaintiff alleges Defendant Wyndham is the parent company of Defendants La Quinta Holdings, CorePoint, LQ, and CPLG. (*Id.* at 5–7, 10.) Defendants Wyndham, La Quinta Holdings, La Quinta Properties, and CPLG "owned, supervised, managed, controlled, and / or operated" La Quinta Tucson Airport. (*Id.* at 3, 5, 7, 9, 10.) These Defendants were "the principal with control over nearly every element of [the Hotel's] operations" and "dictated the actions and inactions" of the Hotel "through highly specific and detailed brand standards, policies, and procedures." (*Id.* at 3–9, 11.) These Defendants benefited from their venture with La Quinta Tucson Airport through "royalty payments, licensing fees, and percentages of the gross room revenue generated by hotel operations, including rates charged through rooms where K.S. was trafficked" and from "gathering personal data from the Wi-Fi it provided to customers including K.S. and her traffickers." (*Id.* at 4, 6, 8, 10–11.) Plaintiff also alleges Defendant LQ "managed day-to-day operations" at the Hotel and was "the employer of all staff at [the Hotel] at all relevant times," and Defendant CorePoint "was involved in the staffing and operation" of the Hotel. (*Id.* at 12,

38.)

Plaintiff further alleges sex trafficking occurred at La Quinta Tucson Airport prior to 2016, and Defendants controlled the "training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for" the Hotel. (*Id.* at 15.) Plaintiff asserts Defendants "failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking" at the Hotel, despite being on notice that sex trafficking had occurred previously at the Hotel and occurs widely in the hospitality industry. (*Id.* at 15–18.)

**II. Standard of Review**

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This pleading standard is not demanding, asking that plaintiffs allege "only enough facts" to "nudge[] their claims across the line from conceivable to plausible." *Id.* While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id*. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (interpreting Rule 8(a) and explaining that there must be specific, non-conclusory factual allegations to support a finding that the claims are more than merely possible, they are plausible). A complaint that merely recites a cause of action's formulaic elements is not sufficient to establish a claim, and legal conclusions are not assumed to be true. *Id.* at 679. Dismissal is only appropriate if the complaint's factual allegations, together with all reasonable inferences drawn in the plaintiff's favor, fail to state a plausible claim that the defendant is liable for the alleged misconduct. *Id*. at 678.

**III. Discussion**

Defendants move to dismiss the FAC asserting Plaintiff fails to state a plausible claim for relief under the TVPRA and Arizona law. (Doc. 28.) Defendants argue (1) the FAC is an impermissible "shotgun pleading," (2) Plaintiff fails to allege facts showing Defendants participated in a venture that violated the TVPRA or had the requisite

knowledge of such venture, and (3) Plaintiff fails to allege knowledge for her Arizona negligence claim, or, alternatively, the two-year statute of limitations has run. (*Id.*) As discussed herein, the Court finds Plaintiff alleges plausible TVPRA beneficiary claims and concedes that the limitations period lapsed on her Arizona negligence claim.

**A. Rule 8 Pleading Standard**

Defendants argue that the FAC is an impermissible "shotgun pleading" because it "attributes allegations to all of them without distinguishing between them or alleging what each Defendant allegedly did." (Doc. 28 at 5.) Defendants assert the FAC therefore fails to provide sufficient notice of what they allegedly did, saw, or knew. (*Id.* at 5–6.)

Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). One type of impermissible "shotgun pleading" is a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026). Shotgun pleadings undermine Rule 8's "fundamental purpose" by failing to provide "adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." *Id.* at 1290 (citing *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011)).

Here, while Plaintiff refers to Defendants collectively throughout the FAC, she also alleges facts and a legal basis against each Defendant. (Doc. 26 at 19–56.) For example, Plaintiff alleges that each Defendant is part of the same corporate structure, each Defendant owns, manages, supervises, or staffs La Quinta Tucson Airport, and each Defendant benefited financially from the Hotel's business in 2016. (*Id.* at 3–12.) Also, Plaintiff alleges that sex trafficking previously occurred at the Hotel and that she and another woman were sex trafficked at the Hotel three to four times a month in 2016 creating a pattern of conduct. (*Id.* at 3–18.) In that pattern, Plaintiff alleges the Hotel staff observed overt signs of her sex trafficking and some staff directly participated with the sex traffickers by acting as lookouts or providing the traffickers with information. (*Id.* at

21–23, 27–29, 33–35, 39–41, 46–48, 52–54.) All Defendants are potentially liable for this conduct because Plaintiff alleges they are in an agency relationship with the Hotel staff, and therefore her allegations of what the staff observed and how they engaged with her trafficker may be attributed to Defendants. (*Id.* at 3–12, 23, 30, 36, 42, 49, 55.) Although the FAC does not identify which staff members were involved or how coordination between Defendants occurred, such allegations do not violate the pleading standard because the facts appear to be "peculiarly within the possession and control" of Defendants and because Plaintiff's "belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Moreover, because Defendants are represented by the same counsel and were able to respond with specificity to the FAC, it is unlikely that Defendants lack sufficient notice of the claims. As such, the Court finds the FAC does not violate Rule 8.

**B. TVPRA Beneficiary Claims (Claims I–VI)**

In 2000, Congress enacted the TVPRA (then called the "Victims of Trafficking and Violence Protection Act of 2000") "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386, § 102, 114 Stat. 1464 (2000) (codified as amended at §§ 1589–1592). The TVPRA provides a civil remedy for victims of sex or human trafficking against a defendant who perpetrated or benefited from their trafficking. § 1595(a). Section 1595(a) provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* To plead a TVPRA beneficiary claim, a plaintiff must allege the defendant "(1) knowingly benefitted, (2) from participation in a venture . . . , (3) which they knew or should have known was engaged in conduct that violated the TVPRA."[2] *Ratha v. Phatthana Seafood Co. (Ratha I)*, 35 F.4th 1159, 1175 (9th Cir. 2022). Because the TVPRA is "remedial," courts construe it "liberally." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019) (quoting *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)).

***Threshold matter: TVPRA violation***

As a threshold matter, to state a claim under § 1595(a), a plaintiff must allege she is a victim under the TVPRA's criminal statute. Defendants do not appear to dispute that Plaintiff alleges she is a victim of sex trafficking under 18 U.S.C. § 1591(a).[3] (*See* Doc. 29 at 6–11.)

Plaintiff alleges that throughout 2016, when she was approximately 26 years old, Jones advertised her for commercial sex, forced her through physical, verbal, and psychological threats to engage in such conduct, and financially benefited from her trafficking. (Doc. 26 at 2, 13–14.) Accordingly, Plaintiff sufficiently pleads she was a victim of sex trafficking for purposes of § 1595(a).

**1. *Knowingly benefits (or attempts or conspires to benefit)***

Plaintiff alleges Defendants knowingly benefited by renting La Quinta Tucson Airport hotel rooms to sex traffickers wherein Plaintiff and another victim were sex

[2] Courts have interpreted the TVPRA to permit a direct beneficiary claim, i.e., that the defendant's *own* acts, omissions, and state of mind establish each element, or an indirect beneficiary claim, i.e., the defendant's *agent's* acts, omissions, and state of mind are imputed to the defendant. *See, e.g.*, *B.C. v. G6 Hosp. Prop. LLC*, No. 3:25-CV-05057-DGE, 2025 WL 1837620, at *3 (W.D. Wash. July 3, 2025) (collecting cases). However, "courts generally determine the existence of an agency relationship at the summary judgment stage, not in determining a motion to dismiss." *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1054 (9th Cir. 2019), *cert. denied*, 589 U.S. 1244 (2020).

[3] Section 1591(a) criminalizes sex trafficking by making punishable whoever knowingly (1) "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" or (2) "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" such conduct "knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act," or "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . ." § 1591(a).

trafficked three to four times a month in 2016. (Doc. 26 at 3–14.) Through this pattern of conduct, Plaintiff alleges Defendants received "royalty payments, licensing fees, and percentages of the gross room revenue generated by [H]otel operations, including rates charged through rooms where K.S. was trafficked" and from "gathering personal data from the Wi-Fi it provided to customers including K.S. and her traffickers." (*Id.* at 4, 6, 8, 10–11.) Moreover, under an agency theory, Plaintiff alleges Defendants' staff continued to rent rooms to her trafficker, despite observing overt signs of this sex trafficking, and some staff directly participated with the traffickers. (*Id.* at 21, 27, 33, 39–40, 46, 52.) For example, Plaintiff alleges her trafficker engaged with Hotel staff by paying, befriending, and compensating them to act as "lookouts" and to provide him with information about police activity. (*Id.*) Defendants assert that "[b]ecause Plaintiff cannot plausibly plead Defendants' participation in or constructive knowledge of a venture that trafficked Plaintiff, she similarly cannot plausibly plead Defendants knowingly benefitted from such a venture."[4] (Doc. 28 at 11 n. 2.)

District courts in the Ninth Circuit have consistently found that the rental of hotel rooms is sufficient to meet this element. *Doe DH v. Scottsdale Inns LLC*, No. CV-23-00759-PHX-JJT, 2026 WL 1328170, at *3 n.4 (D. Ariz. May 13, 2026) (citing *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 936 (D. Or. 2020) ("The 'knowingly benefits financially' element of § 1595 'merely requires that Defendant knowingly receive a financial benefit' and the rental of a hotel room—or royalties from that rental—constitutes a financial benefit sufficient to meet this element."); *see also B.C.*, 2025 WL 1837620, at *5 (declining to interpret § 1595 to require defendants to have actual knowledge that the benefit was from trafficking because such interpretation "would render the 'should have known' language . . . superfluous"). "The phrase 'anything of value' [in the Act] is extremely broad." *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (quoting *United States v. Cook*, 782 F.3d 983, 988 (8th Cir. 2015)).

The Court finds Plaintiff sufficiently alleges that Defendants knowingly benefited.

[4] Although Defendants assert they do not concede that Plaintiff established any element, they do not further argue this element. (Doc. 28 at 6–11; Doc. 30 at 3.)

**2. *From participation in a venture***

Defendants next argue Plaintiff fails to sufficiently allege that they participated in a venture under the TVPRA. (Doc. 28 at 6–8.) According to Defendants, they simply rented rooms to Plaintiff's trafficker, which is consistent with "conduct within the bounds of a traditional hotel-guest relationship." (*Id.* at 7.) Taking Plaintiff's allegations as true, the rental of rooms by Defendants to Plaintiff's trafficker was not a traditional hotel-guest relationship. Plaintiff alleges a pattern in which Defendants, through their Hotel and staff, rented rooms to her trafficker three to four times a month in 2016, and for each stay, Plaintiff alleges her trafficker coordinated sex events between her and approximately seven different men. (Doc. 26 at 13–14.) Further, Plaintiff alleges that when her trafficker took her to the Hotel to work, the trafficker's cousin also brought a second woman that he was trafficking. (*Id.* at 13.) Together, these four individuals, two traffickers and two victims, checked into the Hotel's rooms. (*Id.*) Then, as alleged by Plaintiff, she met seven different men in the front lobby, in view of the front desk staff, to take them back to the Hotel room for the sex events. (*Id.* at 14.) Plaintiff further alleges that some staff made comments to her about the unusual traffic in and out of the Hotel room and that when Plaintiff was being trafficked, there were loud noises, yelling, and intermittent screaming from the Hotel room that was loud enough "to be heard by staff outside the room." (*Id.* at 14, 22–23, 28–29, 35, 41, 47–48, 53–54.) Further, Plaintiff alleges that the condition of the room, with cash, drugs, drug paraphernalia, lubricants, and condoms, indicated sex trafficking. (*Id.* at 22–23, 28–29, 35, 41, 47–48, 53–54.)

When considering this element, the Ninth Circuit recently applied "the ordinary meaning of 'participate' . . . [which] is 'to take part.'" *Ratha v. Rubicon Res., LLC (Ratha II)*, 168 F.4th 541, 547, 560 (9th Cir. 2026) (quoting Participate, Merriam–Webster, https://www.merriam-webster.com/dictionary/participate (last visited Aug. 26, 2026)), *petition for cert. filed*, (U.S. July 23, 2026) (No. 26-105). The court explained that "[t]he ordinary meaning applies because the statute contains no special definition." *Id.* (holding unlawful the district court's requirement that the plaintiff show the defendant "took some

action to operate or manage the venture" reasoning "one can participate in a venture without operating or managing it"). Although the Ninth Circuit has not defined "venture" under the TVPRA's civil provision, the criminal statute defines it as "any group of two or more individuals associated in fact, whether or not a legal entity." § 1591(e)(6). Courts, such as the Seventh Circuit, have declined to incorporate § 1591's definition of "venture" into § 1595, but agree that "it [is] safe to assume that Congress did not intend 'venture' in Section 1595, which establishes civil liability, to be any more demanding than 'venture' in Section 1591, which establishes criminal liability." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023).

To allege participation in a venture, a plaintiff does not need to allege the defendants participated in a "sex trafficking venture." *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 775 (C.D. Cal. 2024); *G.G.*, 76 F.4th at 553–54 ("The text of Section 1595 does not say 'sex-trafficking venture,' but only 'venture.'"). Instead, district courts in the Ninth Circuit commonly require a defendant to have either a "direct association with traffickers" or "a continuous business relationship between the trafficker . . . such that it would appear that the trafficker and [the defendants] have established a pattern of conduct or could be said to have a tacit agreement." *Scottsdale Inns LLC*, 2026 WL 1328170, at *6 (quoting *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021), *abrogated on other grounds by Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022)); *cf. Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) ("In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit."); *G.G.*, 76 F.4th at 560 ("To survive a motion to dismiss, all that is necessary is for a plaintiff to allege such a 'continuous business relationship,' which gives rise to an inference, drawn in the plaintiff's favor, that the civil defendant facilitated the venture's success.").

In this case, Plaintiff alleges facts that Defendants engaged in a continuous business relationship with her trafficker. Defendants ran a commercial hotel business that rented its hotel rooms to Plaintiff's trafficker three to four times a month throughout

2016, despite evident signs of sex trafficking. (*See* Doc. 26 at 13–14, 21, 27, 33, 39–40, 46, 52.) This pattern of conduct supports the reasonable inference that Defendants, through the Hotel, had a tacit agreement with the trafficker to facilitate the sex trafficking. Moreover, under an agency theory, Plaintiff alleges Defendants' staff observed signs of sex trafficking and directly engaged with her trafficker to act as his lookout. (*Id.*) As such, Plaintiff sufficiently alleges Defendants participated in a venture.

**3. *Knew or should have known the venture was engaged in sex trafficking (or another violation of Chapter 77)***

Defendants contend that their general knowledge of sex trafficking in the hotel industry or their constructive knowledge of sex trafficking red flags at the Hotel are insufficient to meet this element. (Doc. 28 at 9.) Defendants argue Plaintiff's allegations "at most" show they should have known she was engaged in commercial sex work, which is insufficient to plead knowledge of sex trafficking. (*Id.* at 9–10.) Defendants further argue Plaintiff's allegations that their staff acted as "lookouts" for her trafficker is conclusory and fails to allege whether the individuals were acting "within their scope of employment" or authorized by any of the Defendants. (*Id.* at 7–8.)

Because "the phrase 'knew or should have known' usually connotes negligence," the Ninth Circuit has applied the negligence standard for TVPRA claims, which "is a less culpable mental state than actual knowledge or . . . recklessness." *Ratha I*, 35 F.4th at 1177 (first quoting *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1358 (9th Cir. 1980); then quoting *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019)). Under the Ninth Circuit's guidance in *Ratha I*, district courts have found that "a plaintiff may not rely solely on general allegations that a defendant was aware of sex trafficking to establish actual or constructive knowledge of specific instances of sex trafficking." *Doe (S.B.C.) v. Six Continents Hotels, Inc.*, 800 F. Supp. 3d 1139, 1143 (W.D. Wash. 2025) (quoting *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390, at *5 (W.D. Wash. Sept. 13, 2023)); *see also Ratha I*, 35 F.4th at 1177 (holding "[s]weeping generalities" are "too attenuated" to support an inference that the defendant

knew or should have known of the "specifically alleged TVPRA violation"). "Rather, a plaintiff must plead facts establishing that a defendant knew or should have known that the plaintiff was being trafficked or regarding a specific trafficking enterprise." *S.B.C.*, 800 F. Supp. 3d at 1143 (citation omitted); *cf. Doe v. Wyndham Hotels and Resorts*, No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831, at *8 (E.D. Cal. Jan. 7, 2025) (finding "that based on the language of the statute . . . the knowledge requirement attaches to the venture, and not a particular victim."); *G.G.*, 76 F.4th at 558 (requiring constructive knowledge of a "venture generally" and not "[k]nowledge of the specific victim, let alone knowledge of her identity") (collecting cases).

The Court finds Plaintiff sufficiently alleges Defendants, through their agents, knew or should have known the venture was engaged in sex trafficking. Plaintiff alleges Defendants owned, managed, supervised, and staffed the Hotel where the sex trafficking occurred, exerted control over the "training, policies, and decisions," and were aware that sex trafficking had occurred previously at the Hotel. (Doc. 26 at 3–18.) Plaintiff alleges that, three to four times a month in 2016, Plaintiff's trafficker and another trafficker checked into the Hotel with Plaintiff and his sex trafficking victim. (*Id.* at 13–14.) Plaintiff alleges she met seven men per stay in the Hotel lobby in view of the front desk. (*Id.*) Hotel staff also observed her trafficker physically and verbally abusing her, controlling her movements, and "shadowing" her at the Hotel premises. (*Id.* at 13–14, 22–23, 28–29, 35, 41, 47–48, 53–54.) Plaintiff further alleges her physical appearance indicated that she was being forced to engage in commercial sex including her visible bruising, poor hygiene, overt physical deterioration, and being malnourished and substance impaired. (*Id.* at 22–23, 28–29, 35, 41, 47–48, 53–54.) Plaintiff alleges the staff made comments to her about the "heavy traffic" in and out of her room, heard screams coming from her room while she was being trafficked, and observed signs of commercial sex work in the room including multiple condoms, lubricants, drugs, and cash. (*Id.* at. 14, 22–23, 28–29, 35, 41, 47–48, 53–54.) Moreover, Plaintiff alleges Hotel staff engaged with her trafficker to act as his "lookouts" and to alert him to police activity. (*Id.* at 21,

27, 33, 39–40, 46, 52.)

While it is yet to be determined whether Defendants' staff were acting within the scope of their duty or otherwise authorized by Defendants, these questions are not appropriately resolved on a motion to dismiss. *See Banks*, 929 F.3d at 1054. Together, these allegations raise the plausible inference that Defendants had at least constructive knowledge that Plaintiff was being sex trafficked. As such, Plaintiff sufficiently alleges Defendants, through their agents, knew or should have known of the sex trafficking.

### C. Plaintiff concedes that her Arizona negligence claim is time-barred (Claim VII).

Plaintiff concedes in her response to the motion that the statute of limitations has lapsed on her claim for "Negligence, Gross Negligence, and Recklessness" by stating that she "is not aware of any legal authority to support an argument that the statute of limitations has not passed." (Doc. 29 at 2 n.2.) While Plaintiff further states that she "will argue against the Defendants regarding the state tort claims in Count VII," this appears to be a typographical error. (*Id.*) Plaintiff does not make any argument against the limitations period, nor does she explain how the claim, arising from allegations that occurred in 2016, would survive Arizona's two-year statute of limitations. *See* Ariz. Rev. Stat. § 12-542. Moreover, because she fails to argue against dismissal in her response to Defendants' motion, she effectively abandons her claim. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *see also Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022). As such, Plaintiff's negligence claim fails and should be dismissed.

## IV. Recommendation

Based on the foregoing, the Magistrate Judge recommends that the District Court grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 28.) Specifically, the Magistrate Judge recommends granting the motion as to Plaintiff's Arizona negligence claim (Claim VII) and dismissing that claim. She further recommends denying the motion as to Plaintiff's TVPRA claims (Claims I–

VI).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within **fourteen (14) days** of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within **fourteen (14) days**. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived.

Dated this 29th day of September, 2026.

Honorable Lori L. Price
United States Magistrate Judge